UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRGIL E. BENNETT,

    Plaintiff,

vs.                                  CIVIL NO.: 02-CV-70063-DT

COMMISSIONER OF                HON. JOHN CORBETT O'MEARA
SOCIAL SECURITY,                MAG. JUDGE WALLACE CAPEL, JR.

    Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is recommended that the Court deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and enter judgment for Defendant.

### II.    REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income [SSI]. Plaintiff filed for benefits on July 5, 2000, alleging that he has been disabled and unable to work since July 28, 1997, due to "[d]egenerative disc disease cervical spine, torn cartilage (slap lesion) left shoulder (on the job 07-23-97), [c]old [u]rdicuria, [and] sugar diabetes." (TR 42-46, 47, 54). The Social Security Administration [SSA] denied benefits initially on September 18, 2000. (TR 33-36). A de novo hearing was held on November 1, 2001, before Administrative Law Judge [ALJ] William Musseman. (TR 186-214). In a decision dated December 12, 2001, the ALJ denied Plaintiff benefits. (TR 157-64). On April 29, 2002, the parties stipulated to a remand. (TR 169-70). The Appeals Council vacated the December 12, 2001, decision and remanded the case to the ALJ. (TR 171-72). A second

hearing was held on October 30, 2002, before ALJ William Musseman. (TR 208-14). In a second decision dated December 12, 2002, the ALJ denied Plaintiff benefits. (TR 8-16). The ALJ found that Plaintiff retains the residual functional capacity [RFC] "to perform a limited range of light work."[1] (TR 14, 15). The ALJ further found that Plaintiff is not disabled within the meaning of the Social Security Act. (TR 16). The Appeals Council refused to review the decision on March 15, 2004. (TR 215-16). Plaintiff has commenced this action for judicial review.

### A. NOVEMBER 1, 2001, TESTIMONY

#### 1. Plaintiff's Testimony

Plaintiff testified that he was born on April 28, 1955. (TR 189). He stated that he is currently married with one minor child at home. Id. Plaintiff stated he graduated from high school. Id. He stated that he is right-handed. (TR 200).

He stated that he did not have earnings from 1980 to 1993 due to a car accident that shattered his right leg. (TR 189-90). He stated that he has problems with his right leg because they put a steel rod in it and plates. (TR 190). He explained that he has arthritis, trouble moving around, and uses a cane. Id. He stated that he believes his sugar diabetes and left shoulder are what keep him from working. Id.

Further, he explained that he was told that he has torn cartilage in his left shoulder rotator cuff. Id. He explained that whenever he tries to lift something heavy, his shoulder "pops [and]

---

[1] Although, none of the parties raise it, the undersigned notes that the testimony elicited from the Vocational Expert [VE] has to do with sedentary jobs. (TR 204). The ALJ relies on this testimony in the text of his decision; however, in the findings he notes that Plaintiff is capable of light work. (TR 14-15). Nonetheless, the sedentary jobs identified by the VE constitute significant numbers, therefore, the error is harmless. The ALJ found 4,200 jobs (TR 14), which is a significant number of jobs under Hall v. Bowen, 837 F.2d 272 (6th Cir.1988) (finding that between 1,350 and 1,800 jobs in the region was sufficient, although there is no "special number").

cracks" when he raises it over his head and then brings it down. Id. He indicated that he has pain, as if someone were twisting a knife in his shoulder and the pain goes up into the neck. (TR 190-91). He stated that the pain is only severe when he lifts something over his head, but that he constantly has less severe pain. (TR 191).

Plaintiff testified that he is diabetic and his symptoms include fainting, lightheadedness, dizziness, color changes, and slurring of words. Id. He explained that he takes a break and sits down to take his insulin when this occurs. Id. He stated that he takes insulin three to four times a day and it takes about forty-five minutes to an hour for his sugar level to stabilize to the point that he can work. Id. He stated that these symptoms occur whether he is at home or work. Id. He indicated that he has been carried home due to his condition.[2] Id. He explained that he has blacked out at the store with his wife, passed out, and had to be carried to the car and into his home by several people. (TR 192).

Plaintiff also testified that his right leg swells and he visited his doctor, Dr. Villareal regarding same. (TR 193). He stated that Dr. Villareal indicated that she wanted to amputate his leg to avoid a case of gangrene. Id. He stated that he has had ulcers on his feet. Id. He stated that he currently is not getting any medical treatment for his shoulder because he does not have insurance. Id. He stated that he pays for his insulin medication, out of pocket. Id. He stated that he still sees Dr. Villareal for his insulin prescription and for neurontin for muscle spasms in his legs and hands. Id. Plaintiff indicated that he does not sleep well at night because he has to get up to go to the bathroom all the time. (TR 193-94).

---

[2] He indicated that Jim Schad (friend and co-worker) was present at that hearing and stated that he had carried Plaintiff into his home. (TR 191, 198-200).

Plaintiff described a typical day. (TR 194). He stated that he tries to walk as much as possible to exercise. Id. He stated that he also tries to help out around the house as much as possible. Id. He stated that he has attempted to work since 1997 installing kitchens and baths and also attempted working for a "repo man." Id. He stated that he was unable to maintain these jobs because of his sugar and related symptoms, which make it impossible for him to focus or work. Id.

He stated that he does not do any yard work, but he does enjoy racing cars as a hobby. Id. He indicated that he still drives, but not as often as he used to because he is afraid due to his sugar diabetes. (TR 194-95). He stated that he has a valid driver's license, but does not drive when his "sugar's getting out of hand." (TR 197). He stated that when this occurs, his wife drives. Id. He indicated that he knows when his sugar is increasing because his lips and the side of his face feel numb. Id. He also added that his mouth gets dry and his gets thirsty. Id. He stated that he takes his medication as prescribed. (TR 197-98). He stated that he still socializes with friends. (TR 195). He indicated that they usually visit him, but he sometimes goes to their home, where they sit, talk, reminisce, or watch movies. Id.

He stated that he watches television and does not have difficulty focusing or concentrating "unless [his] sugar flares up." (TR 196). He stated that when his sugar increases, his sight gets blurry and he will take his insulin and then lie down. Id. He stated that he spends ten to twelve hours of the day laying down, including sleeping. (TR 196-97). He stated that he is able to care for his personal needs and he goes grocery shopping with his wife. (TR 197).

Plaintiff testified that he can lift thirty to thirty-five pounds with both hands. (TR 195). He explained that he could do so "all day long" with his right hand, but not with his left. Id. He stated that he has difficulty sitting for long periods of time because his legs go numb and his feet and legs swell. Id. He stated in order to relieve the numbness and swelling he gets up and moves around. Id.

4

He stated that he can sit up to a half hour or forty-five minutes before he suffers from the numbness and swelling. (TR 196). He indicated that he also has difficulty standing for more than four or five hours due to swelling in his right ankle and leg. Id. He stated that he can stand longer than he can sit and although it hurts, he walks. Id.

### 2. James Schad's Testimony

James Schad, Plaintiff's friend and a coworker, testified at the hearing. (TR 198-200). He indicated that he worked with Plaintiff for three months at Wonder Tub and Bath in February or March of 2001, where he was a sub-contractor. (TR 198, 200). He testified that at work, they would not let Plaintiff lift a lot and would watch his facial coloring. (TR 199). He stated that Plaintiff's "attacks" were erratic on the job and he might have two or three in one day. Id. He stated that he would check Plaintiff's insulin meter as he became familiar with it several times a day, at which it would read high. Id. He indicated that Plaintiff used his meter as he was supposed to and he had his insulin with him at work. (TR 199-200).

### 3. VE's Testimony

VE, Pauline McEachin also testified at the hearing. (TR 201-06). She classified Plaintiff's past work as a general laborer as medium to heavy and skilled. (TR 202). The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education and work experience could perform work with the following restrictions:

> [l]imited to a exertional level of full range of light. With non exertional limitations as no repetitive bending, squatting, kneeling, crawling, or climbing. No over chest level or below waist level work. No push, pull with the non dominant left. No repetitive extended arm reaching, no moving machinery, no unprotected heights.

5

(TR 203-04). The VE testified that the claimant would not be able to return to any of his past relevant work under these limitations and that there would be no light work that such a claimant could perform. (TR 204).

The ALJ posed a second hypothetical assuming "all of the non exertional limitations and change the exertional level to sedentary," with nothing over chest level, no pushing or pulling, and with the non dominant upper extremity. Id. The VE identified the following jobs: information clerk, 1,700 positions; write up clerk, 1,300 positions; and security visual monitor, 1,200 positions. Id.

The ALJ asked a third hypothetical that assumed "all the restrictions in the first 2 hypotheticals. Well a no second hypothetical the, the lower exertional level . . . [p]lus add a limitation . . . the need to be laying down up to 10 to 12 hours a day, at least three days a week." (TR 205). The VE testified that no jobs were available for such a claimant. Id.

Plaintiff's counsel then questioned the VE. (TR 205-06). Plaintiff's counsel asked the VE whether the jobs in response to hypothetical number two would require prolonged sitting. (TR 205). The VE indicated that all the positions listed would allow for a sit or stand option. Id. Plaintiff's counsel asked the VE to

> assume a claimant who has frequent a dizzy spells [sic], a [sic] ranging from 1 to 3 per day in which he would need to actually lie down or a [sic] be away from the, the work site for say up to 30 minutes at a time, sometimes actually passing out having to be carried out.

(TR 206). The VE testified that a claimant that has to lie down ten to twelve hours a day would not be able to perform the jobs listed. Id.

B.     **PLAINTIFF'S OCTOBER 30, 2002, TESTIMONY**

Plaintiff testified that his diabetic condition has remained the same since the previous hearing. (TR 212). He indicated that he has been treating with Hurley Hospital and was referred to a free clinic on Saginaw Street. Id. He stated that he was refused treatment at the free clinic due to his wife's income of five hundred dollars biweekly. Id. He stated that he spends about three hundred dollars a month on insulin, needles, and test strips. Id. He stated that he buys charts at Meijer for his insulin, so he does not need a prescription. Id.

Plaintiff indicated that he still has dizzy spells and fainting episodes when his sugar is too high. (TR 213). He stated that it takes anywhere from forty-five minutes to two hours to recover from these symptoms when they occur. Id. He stated that he checks his blood sugar levels three to four hours now that he is at home. Id. He stated that

> if I first take my insulin and it's - - if it shows high, I take my insulin, and then I've got to wait for 4 hours and check it again. If it's dropped down, I don't have to. But [sic] first time I, I [sic] eat - - anytime I eat or I get moving around, my insulin goes high again [sic]. I have to take another shot, so you're looking at maybe every 4, 4 to 6 hours.

Id.

C.     **MEDICAL EVIDENCE**

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[3]

---

[3]See Subpart E, supra.

**D.     ALJ'S CONCLUSIONS**

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff suffered from "degenerative disc disease of the cervical and lumbar spine, torn cartilage of the left shoulder, insulin dependent diabetes mellitus and a cardiac impairment." (TR 10, 14). However, the ALJ determined that he did not have an impairment, either alone or in combination, which meets or equals in severity in Appendix 1 of the Regulations. (TR 10, 15). The ALJ found Plaintiff's testimony not fully credible. (TR 12, 15). He determined that Plaintiff had the RFC

> to perform a range of light[4] exertional work, or work that requires occasional lifting of up to 20 pounds and frequent lifting of 10 pounds. The claimant is not able to repetitively band [sic], squat, kneel, crawl, or climb. He can not perform over chest-level or below waist-level work. He can not perform pushing or pulling functions with the left upper extremity or any repetitive or extended arm reaching. The claimant can not operate moving machinery or work at unprotected heights.

(TR 15). Thus, the ALJ concluded that Plaintiff is not disabled. (TR 9, 26).

**E.     ANALYSIS**

Plaintiff advances one main claim in his Motion for Summary Judgment. Plaintiff's Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ failed to properly evaluate Plaintiff's credibility; (2) the ALJ failed to properly evaluate all the evidence offered; and (3) the medical records completely support Plaintiff's disability.[5] In response, Defendant's Motion for Summary Judgment contends that these aspects of the ALJ's decision are

---

[4]See Section I., infra, at page 2, n.1.

[5]Plaintiff's Motion for Summary Judgment and Brief filed April 28, 2005 (hereinafter "Plaintiff's Brief"), at pages 7-14.

supported by substantial evidence and further, that Plaintiff offers additional evidence that this Court may not review.[6] The matter is now ready for decision.

## 1. **Standard of Review**

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze each of Plaintiff's claims.

### a. Credibility

Plaintiff alleges that the ALJ erred in assessing his credibility.[7] In order to determine disability based on subjective complaints, we look to 20 CFR § 404.1529(c)(3):

Factors relevant to your symptoms, such as pain, which we will consider include:
(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

---

[6] Defendant's Motion for Summary Judgment and Brief filed July 1, 2005 (hereinafter "Defendant's Brief"), at pages 10-17.

[7] Plaintiff's Brief at pages 12-13.

9

>     (iii) Precipitating and aggravating factors;
>     (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>     (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>     (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>     (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

"However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 CFR § 404.1529(c)(2).

Additionally, although "[c]redibility determinations rest with the ALJ,"[8] "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." See Auer v. Sec'y of Health & Human Servs., 830 F.2d 594, 595 (6th Cir.1987); Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). In addition, "[i]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984). Hurst v. Sec'y of Health and Human Servs., 753 F.2d 517, 519 (6th Cir.1985). As Social Security Ruling [SSR] 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, *4 (E.D.Mich., Aug. 3, 2004) (slip copy).

The ALJ set forth the following reasons for his credibility finding:

---

[8] See Siterlet v. Sec'y of Health and Human Servs., 823 F.2d 918, 920 (6th Cir. 1987) (per curiam). Price v. Comm'r of Soc. Sec., 234 F.3d 1269, 2000 WL 1648129, *2 (6th Cir. 2000) (unpublished disposition; Table).

10

> [a]fter consideration of the record in its entirety, the undersigned concludes that the claimant's testimony is not credible. While the record reasonably supports limitations in his ability to perform basic work activities, it does not in any way support a conclusion of work-preclusive limitations. The record does not support the need to lie down for an extended period as the claimant reported. Moreover, doing so appears to be inconsistent with the claimant's other daily activities and functional abilities including driving without restrictions, standing for four hours and lifting up to 35 pounds. The record clearly establishes a pattern of the claimant failing to follow-up with medical treatment, which worsens his condition. The claimant does not follow up regularly with treatment even when he finds a doctor willing to treat him and to provide samples of medications. At the more recent hearing of October 2002, the claimant stated that there had been no change in his insulin-dependent diabetes mellitus since the November 2001 hearing.

(TR 12).[9] Specifically, Plaintiff alleges that the ALJ's finding is inconsistent because Plaintiff explained that he was not financially able to get the proper treatment.[10] In McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir 1990), the Sixth Circuit agreed with the conclusion in Lovelace v. Bowen, 813 F.2d 55 (5th Cir.1987), wherein

> the court reversed the Secretary's decision that the claimant's condition was not severe because remediable by medication, on grounds that the claimant was unable to afford the medication. The court stated "[i]f, however, the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.' " Id. at 59.

McKnight, 927 F.2d at 242 (citations omitted).

The ALJ points out that Plaintiff was seeing a physician, Dr. Villareal, and was getting free samples. (TR 12). On February 1, 1999, Plaintiff saw Dr. Villareal, and was given Glucotrol at his

---

[9]As Defendant points out (Defendant's Brief at pages 13-16), Plaintiff also cites the early decision by the ALJ of December 12, 2001, regarding credibility. Plaintiff's Brief at pages 7-8, 9, 11 (citing TR 159-61). However, this decision was vacated and the ALJ expressly stated that he was "not adopt[ing] the conclusions reached in the earlier decision." (TR 10).

[10]Plaintiff's Brief at page 9. Plaintiff alleges that because the ALJ stated that the medical evidence was sparse because of a lack of health insurance, that this is inconsistent with his determination of credibility regarding same. Id. However, the statement by the ALJ is not the previous decision of 2001, which was vacated. (TR 159). See Part E., Subpart 1., subsection a., supra, at page 11, n. 9.

appointment to take home with him. (TR 125). On March 13, 2001, even though he reported not having insurance, Plaintiff saw Dr. Villareal again, who stated that she last saw Plaintiff in February 1999. (TR 150-51). He was told to increase Humulin N[11] and "to cover his Humulin R[12] according to scale." (TR 150). Plaintiff went back to Dr. Villareal on March 23, 2001, for a check-up and reported an inability to buy any medication. (TR 152). He was started on Avandia[13] 8mg qd and to continue Humulin N. Id. He followed-up with Dr. Villareal on April 2, 2001, and was told to increase the Humulin N and R and continue the Avandia. (TR 153). The Avandia was given to him as a sample. Id. Although, there is no evidence that the particular drug, Humulin, a form of insulin, was given to him as a free sample, the evidence shows that he was taking it nonetheless. (TR 193). In fact, at the supplemental hearing he testified that he buys "charts at Myers [sic]," and does not need a prescription in order to do that. (TR 212).

Plaintiff argues that these visits to Dr. Villareal constitute regular follow-up without control of his diabetes.[14] However, these visits covered less than one month in total. Additionally, Plaintiff testified that he went to a free clinic in 2000, but was rejected because they told him that his wife made too much money. Id. Therefore, the evidence does not support an inability to pay for medication as in McKnight, 927 F.2d at 242.

---

[11]"Humulin N is a crystalline suspension of human insulin with protamine and zinc providing an intermediate-acting insulin with a slower onset of action and a longer duration of activity (up to 24 hours) than that of regular insulin." Physicians' Desk Reference 1864 (59th ed. 2005).

[12]"Humulin R (U-500) consists of zinc-insulin crystals dissolved in a clear fluid. . . It takes effect rapidly and has a relatively long duration of activity (4 to 12 hours) as compared with other insulins." Physicians' Desk Reference 1867 (59th ed. 2005).

[13]"Avandia (rosiglitazone maleate) is an oral antidiabetic agent which acts primarily by increasing insulin sensitivity." Physicians' Desk Reference 1438 (59th ed. 2005).

[14]Plaintiff's Brief at page 14.

Additionally, Plaintiff argues that the ALJ's finding regarding his driving without restrictions is incorrect.[15] (TR 12). His testimony reveals that he has a valid driver's license and he drives, but that he does not when he feels a "sugar attack coming on." (TR 197). Nonetheless, he does not have any medical restrictions related to operating a motor vehicle and he testified that his license was "valid." (TR 197). He stated that he knows when an attack is coming on and in that case, his wife does the driving. Id.

Plaintiff also points to his testimony in 2002 that he needs to lie down during the day and check his blood sugar three to four times daily, as well as his "diary of activities."[16] (TR 197, 213). Plaintiff's daily activity sheets are part of the record. (TR 85, 177-79). However, the treatment notes do not show a reported need to lie down, at all or to the extent testified to by Plaintiff. Additionally, his daily activity logs show that he helps his daughter with home school, helps make lunch, feeds animals, takes out the trash, visits the local RiteAid, does yard work (for two hours), watches televison, and sits or lies down to elevate his swollen feet and legs. Id. Therefore, the ALJ's failure to mention same appears to be harmless error because there is no reasons to think that it would have lead him to a different decision.

Plaintiff relies on Walston v. Gardner, 381 F.2d 580, 586-87 (6th Cir. 1967).[17] In Walston, "[t]he appellant testified that he suffers intense pain with movement. This testimony was confirmed by every doctor who examined him." Walston, 381 F.2d at 586. That is simply not the case here as

---

[15]Plaintiff's Brief at pages 10-11. Plaintiff also makes arguments regarding the ALJ's finding of a "socially active life," but again this is from the earlier decision, which was vacated. (TR 177-79). See Part E., Subpart 1., subsection a., supra, at page 11, n. 9. Therefore, argumentation regarding same is not discussed here.

[16]Plaintiff's Brief at page 11.

[17]Plaintiff's Brief at page 12.

Plaintiff testified that he has pain; he did not testify to an intensity of pain consistent with that found in Walston. There is no evidence submitted that Plaintiff cannot sit for even five minutes like the plaintiff in Walston or that he "endures great pain" in his activities.

In light of the evidence, the Commissioner could reasonably conclude that Plaintiff's complaints were not fully credible.

> The ALJ may have been wrong, but he was not unclear; after listening to what [Plaintiff] said on the witness stand, observing his demeanor, and evaluating that testimony in the light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [Plaintiff] was trying to make his symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment.

Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987). The "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference," and should not be disturbed. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citation omitted). The ALJ's decision was based on substantial evidence, thus, this Court cannot challenge that finding. Williamson v. Sec'y of Health and Human Servs., 796 F.2d 146, 150 (6th Cir. 1986) ("The ALJ expressly found Williamson's testimony not worthy of credit, and such credibility determinations ordinarily are given deference by the court.").

### b. Review of Evidence

Plaintiff argues that the ALJ failed to consider all the evidence of record; specifically, Plaintiff alleges that the lay testimony of his coworker, James Schad and letters from employers were not considered.[18] The Sixth Circuit "has insisted that the Secretary give the appropriate weight to lay testimony supported by the medical evidence." Jones v. Sec'y of Health and Human Servs., 945 F.2d 1365, 1370 (6th Cir. 1991) (citing Lashley v. Sec'y of Health and Human Servs., 708 F.2d 1048,

---

[18]Plaintiff's Brief at pages 12-13.

1054 (6th Cir. 1983)). The issue becomes whether the testimony is supported by the medical evidence.

The medical evidence presented in the record is limited, but there is no doubt that Plaintiff suffers from diabetes mellitus. (TR 125, 150-53). Further, dizziness and lightheadedness are common problems of diabetes. Physicians' Desk Reference 1865 (59th ed. 2005). James Schad testified that Plaintiff had two to three "attacks" per day. (TR 199). A letter from Don Young states that Plaintiff "would get sugar attacks daily at irregular times, and even though he brought his sugar kit and insulin, it would take anywhere from 45 minutes to an hour or so to bring his sugar level back to a safe condition." (TR 81). Although, the ALJ failed to mention James Schad's testimony or Don Young's letter, the length of time to recover from the "attacks" is not supported, nor mentioned, in the medical records as required under Jones, 945 F.2d at 1370.

Further, Defendant argues that under Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished), an ALJ is not required to consider all the evidence of record, particularly lay observations in order for the decision to stand.[19] The Sixth Circuit stated, "[t]he ALJ's failure to discuss [the] observations [of SSA] does not indicate that they were not considered. An ALJ need not discuss every piece of evidence in the record for his decision to stand." Id. Likewise, the ALJ's failure to mention the testimony or letter does not mean that he did not consider them. Therefore, there is no error in this regard.

---

[19]Defendant's Brief at page 17.

15

### c. Medical Records

Plaintiff contends that he is excused from providing more medical records because of his lack of financial resources and health insurance.[20] However, this was addressed early by the undersigned in the credibility discussion.[21]

### d. Additional Evidence

Plaintiff presents new evidence from a previous employer, Mr. Craig J. Rich of Flint Enterprises, Inc., which was before the Appeals Council, but not the ALJ. (TR 217-18). Defendant points out that this is additional evidence under Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir.1993).[22] The Sixth Circuit has held that the Court does not have to review new evidence unless good cause has been shown and the new evidence is material. Cline v. Comm'r of Social Sec., 96 F.3d 146, 148 (6th Cir. 1996). In Cline, it was the claimant's

> primary argument [] that because the Appeals Council considered his new psychiatric evidence, the district court was required to do so as well. He is mistaken. In Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir.1993), this court decided a case very much like Cline's, holding that where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision. The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding. Id. at 696.

Id. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554

---

[20]Plaintiff's Brief at pages 13-14.

[21]See Part E., Subpart 1., subsection a., infra, at pages 10-12.

[22]Defendant's Brief at page 9, n. 6 and page 16.

(1984) (per curiam).  "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health and Human Servs., 865 F.2d 709, 711 (6th Cir.1988) (citing Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir.1980)).

Additionally, Plaintiff has to establish "newness" pursuant to Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990) (a sixth sentence remand is only "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."); Abbott v. Sullivan, 905 F.2d 918, 925 n.5 (6th Cir. 1990).

Plaintiff has not shown any of the above.  Therefore, any discussion in Plaintiff's Brief regarding the letter by Mr. Rich of Flint Enterprises, Inc. (TR 217-18), has not been part of the undersigned's analysis.

### III.    CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record.  Accordingly, I respectfully recommend that the Court **DENY** Plaintiff's Motion for Summary judgment, **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

                                                s/Wallace Capel, Jr.
                                                **WALLACE CAPEL, JR.**
                                                **UNITED STATES MAGISTRATE JUDGE**

**Dated:**  October 3, 2005

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on <u>October 3, 2005,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>Janet L. Parker, Assistant United States Attorney, 101 First Street, Suite 200, Bay City, Michigan 48708</u>.

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s):  <u>Brian M. Barkey, G-5091 Miller Road, Flint, Michigan 48507-1043, and the Office of the Regional Counsel, Social Security Administration, 200 West Adams Street, 30th Floor, Chicago, Illinois 60606</u>.

                                                  <u>s/James P. Peltier</u>
                                                  United States District Court
                                                  Flint, Michigan 48502
                                                  810-341-7850
                                                  E-mail: pete_peltier@mied.uscourts.gov